FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 MAY -4 PM 2: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

GADSDEN CITY BOARD OF
EDUCATION,

    Plaintiff

    vs.

B.P., a minor, L.H., a minor
and WAYNE WATTS, a person
acting as a parent,

    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.

CV-98-AR-881-M

*cko*

**ENTERED**

**MAY 4  1998**

### MEMORANDUM OPINION

Plaintiff, Gadsden Board of Education ("Board"), initially
brought the above styled action in the Circuit Court of Etowah
County, Alabama, seeking a temporary restraining order ("TRO"), a
preliminary injunction, and a final injunction authorizing it to
suspend or remove from school the minor defendants, B.P. and
L.H., who currently receive special education services from the
Board under the Individuals With Disabilities In Education Act
("IDEA" or "Act"). 20 U.S.C. § 1400 *et seq.* Despite its earlier
request for injunctive relief, which was granted by the state
court in the form of a TRO and a preliminary injunction, the
Board currently seeks a declaration that this case is moot.
(Pl.'s Mot. For Order Declaring Case Moot (Doc. 5), April 22,
1998). Defendant Wayne Watts ("Watts"), who is acting "as a
parent of" the two minor defendants, pursuant to 34 C.F.R. §



300.13,[1] removed the case to this court.[2]  Watts opposes a
declaration that the case is moot.  He asks that this court order
the school board to exhaust administrative remedies before
seeking judicial relief in this and future IDEA cases.  (Defs.'
Objection (Doc. 6))  The court heard oral arguments on April 24,
1998.  Subsequently, it has decided to: 1) deny the Board's
motion to moot the above captioned action, and 2) decline Watts's
invitation to issue an order requiring exhaustion in all Gadsden
Board of Education IDEA cases.  In accordance with the parties'
stipulated agreement, the current preliminary injunction will
remain in effect unless and until a party seeks and obtains a
dissolution of that injunction.


## I. FACTS

The present dispute arose after a March 10, 1998, incident
involving the two fourteen year old mentally retarded

---

[1]  During a hearing held on April 24, 1998, counsel for defendants
indicated that Watts is not the legal guardian for either minor,
notwithstanding the Board's complaint which names Watts as the minors'
"alleged legal guardian."  Instead Watts is the former executive director and
presently a consultant to the agency where the minors live.  Because Watts is
legally responsible for the minors, he is therefore an appropriate legal
representative for them under the IDEA.  *See* 34 C.F.R. § 300.13 note (1997)
("The term 'parent' is defined to include persons acting in the place of a
parent, such as ... persons who are legally responsible for a child's
welfare.").

[2]  The Board has waived any procedural defects which may have been
associated with the removal.

2

defendants.[3]   The students' classroom teacher, Karla H. White

("White"), was present in the classroom on the date in question

when the students began "yelling, cursing, calling other students

names, rolling around the room in the office chairs, spraying

Lysol and perfume, turning over chairs, and going through ...

desk draws ...."   (White Aff.)   When the students would not obey

her commands to behave, White requested that the Director of the

school, Larry Weathers ("Weathers") help her evacuate the other

students. (White Aff.)   After the evacuation, B.P. and L.H. began

directing their attention to each other. (White Aff.)   They began

fighting, destroying school property, and throwing items found in

the classroom, including crayons, staplers and Coca-Cola cans.

(White Aff.)   The students dumped everything from White's desk

unto the floor, broke a glass candy jar, and began threatening to

cut each other with the glass.   (White Aff.)   The fight continued

until two police officers escorted the students from the room.

(White Aff.; Weathers Aff.)    During the disturbance, B.P. used

profane words and threatened to bring a gun to school and shoot

White.   (White Aff.)    L.H. told White and Weathers that she did

not have to do what the adults told her to do because they

"couldn't do anything to her." (White Aff.)   Likewise, B.P.

---

[3]   The court presumes that the students are mentally retarded only
because they reside at a group home for persons suffering from mental
retardation.   (*See* Compl. at ¶ 3.)

stated that "no one could touch him or do anything to him."
(White Aff.)

Because of this incident, the Board suspended both students
for three days.   (Weathers Aff.)   According to White, the
students had caused similar disturbances in the past.   (White
Aff.)   Consequently, the Board had suspended the students from
school on various occasions, for at least six days each.   (Compl.
at ¶ 5.)[4]

## II. PROCEDURAL HISTORY

On March 12, 1998, two days after the classroom incident,
the Board sought a TRO, a preliminary injunction, and a final
injunction authorizing it to suspend or remove B.P. and L.H. from
school.   The state court judge entered a TRO for ten days and set
a preliminary injunction hearing date for March 19, 1998.   In
addition, the judge appointed a separate guardian ad litem for
each of the students, who are not siblings.

On the morning of March 19, the Board, Watts, and both
guardians ad litem entered into a written agreement to remove the
students from the Gadsden school system.   The parties also signed

---

[4]   Defendants do not dispute the facts as alleged by the Board or as
reflected in the Board's affidavits.   (Defs.' Objection (Doc. 4) ¶3.)

4

a stipulated order for a preliminary injunction prohibiting the
students from returning to any Gadsden school pending further
order of the court.  (Doc. 7.)  Consequently, the judge entered a
preliminary injunction and fixed a bond, which the Board posted,
thereby making a preliminary injunction hearing unnecessary.

Despite the apparent agreement between the parties,[5] on
April 13, 1998, the defendants removed the case to this court
based on federal question jurisdiction and filed an objection to
the Board's demand for injunctive relief.  *See* 20 U.S.C. §
1415(i)(3) ("The district courts of the United States shall have
jurisdiction of actions brought under [the IDEA] without regard
to the amount in controversy.")  Defendants argued that the 1997
amendments to the IDEA require that the Board exhaust all
administrative remedies prior to seeking judicial intervention.
Therefore, argued the defendants, the Board's original request
for injunctive relief was premature.  The Board responded by
filing its current motion to declare the controversy moot in
light of the stipulated preliminary injunction.

Watts opposes the Board's motion, arguing that the present
dispute is "capable of repetition, yet evading review."

---

[5]  Defendant Watts does not deny that his signature appears on the
agreement removing the students from the Gadsden school system and imposing a
preliminary injunction.

5

Consequently, he asks this court to require that the Board exhaust its administrative remedies before seeking judicial intervention, at least in this case, if not in all future IDEA cases.  Rather than file a counter-claim seeking such relief, Watts made his request orally at the April 24 hearing.  In an effort to resolve this potentially re-occurring controversy swiftly, the court took the motion under consideration without requiring that Watts file a counter-claim.

### III. THE IDEA FRAMEWORK

Under the IDEA,  children with disabilities are entitled to "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs ...."  20 U.S.C. § 1400(d).  In order to meet the  "unique needs" of the child, the IDEA

> provides procedural safeguards to permit parental
> involvement in all matters concerning the child's
> educational program and allows parents to obtain
> administrative and judicial review of decisions they
> deem unsatisfactory or inappropriate.  Under this
> scheme of procedural protections, parents are entitled
> to ... an opportunity for an "impartial due process
> hearing" with respect to any [complaints about the
> child's Individualized Educational Program ("IEP"). §
> 1415(f)(1)].  In the event that a party is dissatisfied
> with or aggrieved by the findings and decisions made
> after the impartial due process hearing, that party may
> obtain additional administrative review by the state
> educational agency. [§ 1415(g)].  If that party is
> still dissatisfied or remains aggrieved after the
> administrative appeal, a judicial review is available
> in either state court or federal court to contest the

6

decisions of the educational agency. [§ 1415 (i)(2)].

*N.B., by D.G. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (citations omitted), *cert. denied*, ___ U.S. ___, 117 S. Ct. 769 (1997). <u>Pending the outcome of any proceedings initiated under the IDEA, Section [1415(j)] "creates a presumption in favor of the child's current educational placement ...."</u> *Honig v. Doe*, 484 U.S. 305, 328, 108 S. Ct. 592, 606 (1988) (formerly § 1415(e)(3)).

Section 1415(j) is alternatively referred to as the "pendent placement provision," *Susquenita Sch. Dist. v. Raelee S., by and Through Heidi S.*, 96 F.3d 78, 80 n.1 (3rd. Cir. 1996), the "status quo provision," *J.B. v. Killingly Bd. of Educ.*, No. 3:97 CV 1900 (GLG), 1997 WL 784807, at * 8 (D. Conn. 1997), or the "stay-put provision" of the IDEA. *Honig*, 484 U.S. at 308, 108 S. Ct. at 596. The "stay-put provision" creates a "presumption in favor of the child's current educational placement which school officials can overcome only by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others." *Id.* Assuming the school district can make such a showing, it is entitled to obtain a court order enjoining the child from attending the school in question, pending the outcome of any

7

proceedings initiated under the Act. *See id.* at 327 - 28, 108 S.
Ct. at 606.

### IV.  THE MOOTNESS ISSUE

Pursuant to *Honig v. Doe*, the Board sought an injunction in
the present case claiming that B.P. and L.H. were "substantially
likely" to injure themselves or others. *See id.* at 328, 108 S.
Ct. at 606.  In response, defendants first argued that issuance
of injunctive relief was premature because the Board had failed
to exhaust its administrative remedies.  Defendants pointed out
that, under the IDEA's 1997 amendments, the plaintiff may seek an
expedited hearing authorizing the temporary removal of a student
where continued enrollment is "substantially likely to result in
injury to the child or to others."  § 1415(k)(2)(A); §
1415(k)(7)(C).  Given the availability of an expedited hearing,
the defendants argued that the school district had an obligation
to seek such a hearing before attempting to obtain judicial
relief. *See N.B.*, 84 F.3d at 1378 (noting that "The philosophy
of the [IDEA] is that plaintiffs are required to utilize the
elaborate administrative scheme established by the [IDEA] before
resorting to the courts to challenge the actions of the local
school authorities.") (alterations in original)(citations
omitted).

8

After defendants filed their objection to the Board's request for a permanent injunction, the Board filed its current motion to have the present controversy declared moot. The Board argues that both a permanent injunction and exhaustion, in the form of an expedited hearing, are unnecessary in the present case. As a result of the agreement and injunction, the student defendants are now involved in a "homebound program." (Doc. 5 ¶2.) The Board argues that, because the students no longer pose a substantial threat of injury or harm to their classmates, a permanent injunction is unnecessary, and that an expedited hearing is unnecessary for the same reason. Additionally, the Board points out that the educational reassignment occurred with the consent of the parties, thereby negating the need for any due process hearing, whether expedited or not. Accordingly, the Board argues that the exhaustion question, along with the present controversy, is moot.

However the court is concerned that the Board requests a judicial resolution it does not in fact wish to obtain. Should the court grant the Board's motion to the moot this case, not only would this controversy cease to exist, but the preliminary injunction would also vaporize. During the April 24 hearing, the court expressed this concern, and the Board clarified that it seeks an order declaring that the exhaustion question is moot,

9

but reaffirming the preliminary injunction presently in effect.

The court agrees that the exhaustion question is not
currently implicated in the present case.  Under the IDEA, a
parent or guardian has the right to challenge changes in the
child's placement or IEP.  § 1415 (f)(1);  § 1415(b)(6).  Once
the educational body receives a complaint about the proposed
change, the parent/guardian is entitled to an administrative due
process hearing to resolve the complaint.  Id.  However, if the
parent/guardian fails to object to the proposed change, in either
the IEP or educational placement, then the administrative hearing
process does not commence.  In the present case neither Watts,
nor the natural parents, nor the guardians ad litem have
complained about the new educational placement.  Consequently,
the administrative hearing process is not yet implicated.

While the mutually agreed upon change in the defendants'
educational placement temporarily mooted the exhaustion question,
Watts is not content to leave matters as they currently stand.
Despite his acquiescence to the new educational placement and the
preliminarily injunction, Watts is concerned that, in the future,
the Board may again seek judicial relief against B.P. and L.H.
before attempting to obtain an expedited hearing.  Therefore,
Watts requests that this court order the Board to obtain an

10

expedited hearing before seeking judicial intervention to prevent
B.P. and L.H. from attending school.  Such an order is
appropriate, argues Watts, because the conduct which gave rise to
the current controversy is "capable of repetition, yet evading
review."  See Honig, 484 U.S. at 318, 108 S. Ct. at 601 (citation
omitted).  Indeed, during the April 24 hearing, counsel for Watts
admitted that defendants would like for the proposed order to
apply not only in the present case, but in all the Board's future
IDEA cases.

     The court is persuaded that the current controversy is
"capable of repetition, yet evading review" and, therefore, not
moot.  While courts are ordinarily "unwilling to assume that the
party seeking relief will repeat the type of misconduct that
would once again place him or her at risk ...., [n]o such
reluctance ... is warranted here."  Id. at 320, 108 S. Ct. at
602.  Like the students in Honig, it appears that the students in
the present case are incapable of controlling their aggressive
and impulsive tendencies.  See id. at 320, 108 S. Ct. at 602.
Should the students return to school, it is likely that they
would continue creating a substantial risk of harm.
Consequently, "there is a 'reasonable expectation' that [the
students] would once again be subjected to ..." an effort by the
Board to enjoin their attendance at school.  See id. at 319 - 20,

11

108 S. Ct. at 602 (citations omitted). Thus, as in *Honig*, the exhaustion issue is likely to resurface in the present case.

## V. THE EXHAUSTION REQUIREMENT

Exhaustion is not required where available administrative remedies are either futile or <u>inadequate</u>. *Honig*, 484 U.S. at 327, 108 S. Ct. at 606 (citations omitted). Applying this rule, the *Honig* court recognized that the lengthiness of the pre-1997 IDEA administrative process made such proceedings inadequate, where a school district sought to promptly enjoin a dangerous child from attending school. *Id.* ("[W]e have no reason to believe that Congress meant to require schools ... to exhaust in all cases, no matter how exigent the circumstances."). Therefore, held the Court, district courts have the authority to entertain requests for an injunction in IDEA cases, even where the moving party has failed to exhaust. *Id.* at 327, 108 S. Ct. at 606 ("The stay-put provision in no way purports to limit or pre-empt the authority conferred on the courts by [§ 1415 (i)(2) - (i)(3)] indeed, [these provisions] say[] nothing whatever about judicial power.") (formerly § 1415(e)(2)).

On the other hand, because the present version of the IDEA contains a mechanism for an expedited hearing, Watts argues that *Honig* is no longer applicable in IDEA cases. This argument is

12

unpersuasive for several reasons.  First, the expedited hearing
provision provides that school personnel "may" seek an expedited
hearing if they "maintain that it is dangerous for the child to
be in the current placement ...."  § 1415(k)(7)(C) (emphasis
supplied).  Congress's use of the permissive term "may" indicates
that resort to such a hearing is optional.  The statute does not
require that school personnel seek an expedited administrative
hearing when attempting to remove a dangerous student from the
classroom.

     Second, although the parties in the present case were able
to convene the defendants' IEP committee and reach an agreement
upon short notice, such a rapid response is not the norm.  (See
Doc. 5 at ¶1).  From the arguments presented at the April 24
hearing, it appears that an expedited hearing has never occurred
in the Gadsden school system.[6]  Consequently, it is unclear
whether an expedited hearing procedure is currently available in
the Gadsden school system

     Even if an "expedited hearing" is available, there is no
guarantee that such a hearing would or could actually occur

---

[6] The 1997 amendments only became effective on June 4, 1997 and the
proposed administrative regulations have not yet been implemented.  Dixie Snow
Huefner, *The Individuals With Disabilities Act Amendments of 1997*, 122 Ed. Law
Rep. 1103, at * 1 (1998).

<u>expeditiously</u>.  The statute does not supply a time period by
which such hearings must occur, nor does it supply a time period
by which a decision must be rendered.  *See* § 1415(k)(7)(c).  If
the proposed administrative regulations are promulgated this
summer, as expected, Huefner, *supra* at * 1, expedited due process
hearings would have to "result in a decision within 10 business
days of the request for the hearing, unless the parents and
school officials otherwise agree."  Notice of Proposed
Rulemaking, 62 Fed. Reg. 55026, 55104 (1997) (to be codified at
34 C.F.R. § 300.528(a)(1)) (proposed October 22, 1997).  Even if
these proposed regulations take effect, however, the unique
circumstances surrounding a particular case may still make an
expedited hearing inadequate.  In some cases, such as the instant
case, school officials may need immediate authority to enjoin a
child who is scheduled to return from a suspension in less than
twenty-four hours.  Under such circumstances, the proposed ten
day period would certainly be inadequate.


     Finally, the position taken by the Department of Education's
("DOE") Office of Special Educational Programs ("OSEP") supports
the conclusion that, even under IDEA's 1997 amendments, there is
no per se exhaustion requirement.  OSEP took the position that
"the agency, under the authority of *Honig v. Doe,* [can] still
seek a temporary restraining order or injunction from a court,"

even in the face of the new expedited hearing provision.
Huefner, *supra*, n.28.  While the DOE failed to codify the OSEP
position, the proposed regulations certainly do not take the
opposite approach.  *See* Huefner, *supra*, n.28; 62 Fed. Reg. 55026.

Although the court was unable to find any legal precedent
directly on point, the court concludes that exhaustion is not a
per se requirement under the 1997 amendments to the IDEA.   In
support of this conclusion, the court relies upon: 1) the plain
language of the expedited hearing provision, 2) the reality that
an "expedited" governmental hearing may, under some
circumstances, prove inadequate or futile as described in *Honig*,
and 3) the position taken by the DOE's Office of Special
Education Programs.

CONCLUSION

Based on the foregoing, the court finds that the Board's
motion to moot the current action should be denied.  However,
pursuant to the parties' stipulated agreement, the preliminary

15

inunction shall remain in effect indefinitely.


A separate appropriate order will be entered.

DONE this __4__ day of May, 1998.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE